478 So.2d 679 (1985)
STATE of Louisiana, Respondent,
v.
Charles W. EPPINETTE, Applicant.
No. 17473-KW.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1985.
Jerry Jones, Monroe, for applicant.
*680 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., New Orleans, William R. Coenen, Jr., Dist. Atty., Terry A. Doughty, Asst. Dist. Atty., Rayville, for respondent.
Before HALL, FRED W. JONES and SEXTON, JJ.
HALL, Chief Judge.
Defendant, Charles W. Eppinette, was found guilty as charged in a bench trial of driving while intoxicated, LSA-R.S. 14:98; driving left of center, LSA-R.S. 32:71; and resisting arrest, LSA-R.S. 14:108. On the driving while intoxicated conviction, the defendant was sentenced to pay a fine of $500.00 and costs, 60 days in the parish jail upon default, and to a jail term of 30 days. The jail term was suspended and the defendant was placed on unsupervised probation for a period of two years. The court imposed four special conditions of probation being that the defendant: (1) serve 7 days in the parish jail at the pleasure of the sheriff, (2) perform of four 8 hour days of community services under the supervision of the Richland Parish Police Jury, (3) participate in the substance abuse program, and (4) participate in the driver improvement program administered by the Northeast Louisiana Substance Abuse Clinic. For the offense of driving left of center the court sentenced the defendant to pay a fine of $25.00 and costs, in default to serve 30 days in the parish jail. On the resisting arrest charge, the court sentenced the defendant to serve 90 days in the parish jail, suspended execution of the sentence and placed the defendant on unsupervised probation for a period of two years to run consecutively with the previous probation period. The court imposed a special condition of that probation that the defendant complete the alcoholic treatment program at Woodland Hills and submit documentary proof of successful completion of that program.
This court granted defendant's application for a writ of review to determine whether the trial court erred in finding that the police had reasonable cause to stop the defendant, whether the trial court erred when it allowed the state to introduce results of a blood alcohol test, and whether the defendant had a right to a trial by jury and knowingly waived that right. Finding no error on the first two issues but finding that the defendant had a right to a trial by jury and did not waive that right, we reverse the convictions and sentences and remand for a new trial.

FACTS
At approximately 1:15 on the morning of January 19, 1985, Sam Hesser, a trooper for the Louisiana State Police, observed the defendant in his pick-up truck driving eastbound on Highway 80 in Richland parish. Trooper Hesser, who was travelling west on Highway 80, observed the truck run off the south shoulder of the highway and then come back into the eastbound lane of travel. Trooper Hesser turned his vehicle around, followed the defendant, and observed the defendant cross the center line of the roadway completely into the opposite lane of travel. After the trooper turned on his lights to stop the defendant, the defendant proceeded a couple of hundred yards and turned left into a driveway off of Highway 80. The trooper observed the defendant exit the vehicle, stagger as he got out of the truck, and hold on to the truck as he walked to keep his balance. The defendant staggered as he walked and had a strong odor of alcohol on his breath. As Trooper Hesser attempted to conduct a field sobriety test, the defendant became combative and walked from where they were standing to enter the house. The defendant was told that he was under arrest for driving while intoxicated and when the trooper attempted to handcuff the defendant a struggle took place. The defendant was able to break away from the trooper and enter the house, after which the defendant stated that he was going to get a gun and kill the trooper. After members of the defendant's family spoke with him, the defendant came out of the house. When Trooper Hesser again attempted to place the defendant under arrest and handcuff him another struggle occurred and the defendant was wrestled *681 to the ground by the trooper and several other law enforcement officers who had arrived. During the struggle the defendant sustained a cut near his eye and was taken to the Richland Parish Hospital.
At the hospital, at approximately 2:55 a.m., a blood alcohol test was administered. The blood was determined to contain 0.18 percent alcohol.

ASSIGNMENT OF ERROR NUMBER 1 REASONABLE CAUSE
By this assignment, the defendant contends that Trooper Hesser did not have reasonable cause to stop the defendant as required by LSA-C.Cr.P. Art. 215.1. Under Art. 215.1, a law enforcement officer may stop a person in a public place whom he reasonably expects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
Defendant contends that the observations of the trooper in which the defendant swerved partially off the shoulder of the road and then later swerved across the center line of the highway completely onto the opposing westbound lane only constituted minor deviations insufficient to establish reasonable cause to stop a motorist. Defendant relies upon the case of State v. Vaughn, 448 So.2d 915 (La.App.3d Cir. 1984) in support of this position. In Vaughn, a police officer observed the defendant's vehicle sway in a southbound lane of travel several times and observed the defendant's vehicle pass approximately six inches to the left of the center line for approximately 10 feet. The Third Circuit in Vaughn found that such minor deviations observed by the police officer in that case were insufficient to establish reasonable cause to stop a motorist.
Trooper Hesser had reasonable cause to stop the defendant based upon his observations. Swerving onto the shoulder and then later completely crossing the center line of the highway into the opposing lane of traffic constitute more than minor traffic deviations. Such observations by the trooper constituted reasonable and articulable suspicion that the defendant was driving his vehicle while intoxicated. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2 BLOOD ALCOHOL TEST
By this assignment, the defendant contends that the trial court erred in allowing the state to introduce results of defendant's blood alcohol test into evidence because the defendant was not properly advised of the consequences if the test result shows .10 percent or above as required by LSA-R.S. 32:661 C.[1]
Prior to defendant's consent to the blood alcohol test, Officer Hesser read to the defendant his rights relating to the chemical test for intoxication from a form provided by the Louisiana Department of Public Safety. The form states in pertinent part:
A. These are the CONSEQUENCES AND EFFECTS OF SUBMISSION OR REFUSAL TO SUBMIT TO THE CHEMICAL TEST.
1. Refusal to submit to this chemical test shall result in the suspension of your driver's license for a minimum period of six (6) months.
2. Refusal to submit to this chemical test may also result in the loss of your vehicle registration and license plates.
3. Evidence of your refusal to submit to this chemical test or test results *682 of .10 percent or above will be used against you in court.
NOTE: If a traffic fatality has occurred or a person has been seriously injured you may not refuse the chemical test, if you have refused or are unable to participate in a field sobriety test.
Relying upon State v. Downer, 460 So.2d 1184 (La.App.2d Cir.1984) and State v. Cole, 466 So.2d 66 (La.App.2d Cir.,1985), defendant contends that the form did not adequately advise him of the consequences of a result of .10 percent or above in that such a result creates a conclusive presumption of intoxication.
For reasons more fully discussed in State v. Fortner, 478 So.2d 673 (La. App.2d Cir.1985), decided this day, the test results are admissible even though the warning required by the statute was not adequately given. The 1984 amendment to the statute deleted the provision that the results of the test not be admissible if the warning is not followed. Exclusion of the evidence is no longer required.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3 RIGHT TO A JURY TRIAL
By this assignment, defendant contends that the consolidation of the charges against him in one trial limited defendant's sentencing exposure to $500.00 or six months in jail pursuant to LSA-C.Cr.P. Art. 493.1 or, in the alternative, triggered the right to a jury trial.
The defendant was charged in separate bills of information with driving while intoxicated and resisting an officer and was charged in a separate affidavit with the offense of driving left of center. Under LSA-R.S. 14:98 whoever is convicted of driving while intoxicated, first offense, may be fined not more than $500.00 and imprisoned for not more than six months. Under LSA-R.S. 14:108, whoever commits the crime of resisting an officer may be fined not more than $500.00 and/or be imprisoned for not more than six months. Under LSA-R.S. 32:57, whoever commits the traffic violation of driving left of center for a first violation may be fined not more than $175.00 and/or imprisoned for not more than 30 days. Upon the defendant's motion, and without objection by the state, the three charges were consolidated for trial.
Under LSA-C.Cr.P. Art. 493.1, whenever two or more misdemeanors are joined in accordance with Art. 493 in the same indictment or information, the maximum aggregate penalty that may be imposed for the misdemeanors shall not exceed imprisonment for more than six months or a fine of more than $500.00, or both. In State v. Odell, 458 So.2d 1304 (La.1984), the Supreme Court held that it is only when the prosecuting attorney exercises discretion and joins the violations in one affidavit or information that a defendant is entitled to the reduced sentencing exposure. The Odell case involved the applicability of LSA-R.S. 13:2501.1(J) which deals with proceedings in the Traffic Court of New Orleans, but the court noted that LSA-C.Cr.P. Art. 493.1 is a complementary provision dealing with proceedings in district court and that the identical sentencing limitation contained therein is dependent upon how the district attorney charges the offender and not on how the case is eventually tried.[2]
*683 In the present case, the defendant was charged in two separate bills of information and one separate affidavit and the offenses were consolidated for trial by the trial judge on the defendant's motion. As a consequence, LSA-C.Cr.P. Art. 493.1 does not apply to this case so as to limit the aggregate penalty. Therefore, we must determine whether the defendant had a right to a trial by jury and if so, whether he knowingly waived that right.
LSA Const. Art. 1, § 17 provides in pertinent part:
A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons....
LSA-C.Cr.P. Art. 779 provides that a defendant charged with a misdemeanor in which the punishment may be a fine in excess of five hundred dollars or imprisonment for more than six months shall be tried by a jury of six jurors.
When two or more charges are joined for trial, the aggregate punishment which may be imposed determines whether the right to trial by jury exists. If the total potential punishment exceeds six months imprisonment an accused is entitled to a jury trial. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); Codispoti v. Pennsylvania, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); State v. McCarroll, 337 So.2d 475 (La.1976); State v. Williams, 404 So.2d 954 (La.1981); State v. Davis, 427 So.2d 1238 (La.App.2d Cir.1983); State v. Boult, 440 So.2d 766 (La.App.2d Cir. 1983).
In State v. Odell, supra, the defendant was charged by eight separate affidavits with the commission of eight separate traffic offenses. The changes were consolidated for trial on defendant's motion. The Supreme Court stated: "It is not disputed that absent the recent enactment of La.R.S. 13:2501.1(J) [substantially identical to LSA-C.Cr.P. Art. 493.1], defendant would have been entitled to a jury trial because the accumulation of offenses exposed him to a penalty in excess of six months imprisonment." The court further stated: "The Legislature, in enacting Subsection J of La.R.S. 13:2501.1, was surely cognizant of the court's decision in State v. McCarroll. That decision tied the jury trial right to the penalty exposure in a `case' irrespective of whether charges were joined by the charging document or by the court in response to defendant's motion." The court in Odell held that the penalty limitation or LSA-R.S. 13:2501.1(J) was not applicable and since the defendant was exposed to the possibility of a sentence exceeding six months imprisonment, the defendant was entitled to a jury trial. We find no distinctions between Odell and the present case.
The defendant in the present case was exposed to imprisonment of one year and thirty days and possible fines of $1,175.00. Since the aggregate potential penalties exceeded six months and/or a $500.00 fine the defendant had the right to a trial by jury.
The next question presented is whether the defendant waived the right to a trial by jury by entering a motion to consolidate the three charges for trial and by proceeding to trial before the judge without raising any issue as to his right to trial by jury.
In State v. Williams, supra, defendant's counsel did not object to consolidation of charges for trial and a consolidated trial was held. There was no request for trial by jury and at no time was trial by jury mentioned in the trial court. Nevertheless, *684 the Supreme Court reversed the conviction, holding:
One who is entitled to trial by jury can waive that right. However, jury trial waiver is not presumed.
Although a right to a jury trial may be waived in a noncapital case, Art. 1, § 17 requires that the waiver be "knowingly and intelligently" made. Therefore, we must indulge every reasonable presumption against waiver of this fundamental right. State v. McCarroll, supra, 337 So.2d. 480.
See also State v. Muller, 351 So.2d 143 (La.1977).
Nothing in this record shows that Williams knowingly and intelligently waived his right to trial by jury. There is no indication that Williams was informed by the court or counsel of his right and no suggestion of waiver. The presumption against waiver has not been rebutted.
Under Code of Criminal Procedure Article 706, consolidation is authorized upon motion of the defendant. It would be illogical to hold that the filing of a motion to consolidate by the defendant amounts to a waiver of the right to trial by jury when it is the filing of the motion and subsequent consolidation which triggers the right to trial by jury. The filing by a defendant of a motion to consolidate does not itself constitute a waiver of the right to trial by jury, which right flows from the granting of the motion. State v. Williams, supra, seems to make it clear that failure to request a jury trial and proceeding to a bench trial without objection does not amount to a waiver. See also State v. Davis, supra, and State v. Boult, supra.
The record in the present case discloses that at no time was the right to a jury trial mentioned by either the state, the defendant, or the court. There is no indication that Eppinette was informed of his right to a trial by jury and made a knowing and intelligent waiver of that right. The presumption against waiver has not been rebutted. Since the defendant was entitled to a trial by jury and did not knowingly and intelligently waive that right, the convictions and sentences must be reversed and the case remanded for a new trial.

DECREE
For the reasons assigned, the convictions and sentences are reversed, and the case is remanded to the district court for a new trial.
REVERSED AND REMANDED.
SEXTON, J., concurs in part and dissents in part with written reasons.
SEXTON, Judge, dissenting.
I respectfully dissent from the majority holding as to Assignment of Error No. 3 that the defendant was entitled to a jury trial. The majority determines that it is unable to distinguish the rationale of State v. Odell, 458 So.2d 1304 (La.1984), from the circumstances here presented, although the majority apparently implicitly recognizes that the Odell application to LSA-C.C.P. Arts. 493 and 493.1 is dicta. Because I agree with the Chief Justice's dissent in Odell, and also Judge Hall's dissent in State v. Boult, 440 So.2d 766 (La.App.2d Cir.1983), I would not extend Odell until mandated by the Supreme Court.
Moreover, I believe there is a specific distinction to be drawn between Odell and the instant case. Odell interpreted LSA-R.S. 13:2501.1(J) which applies to the joinder of offenses in the New Orleans traffic court. The Odell majority relied on certain language in that statute to determine that the legislature only intended such a reduction to occur in the New Orleans traffic court when the state joined the offenses in the bill of information, and not when consolidated on motion of the defendant. The Odell court determined that the legislature's language limiting the applicability of the provision to "whenever two or more misdemeanors or ordinance violations are joined by affidavit or information" rather than "in a case," was an implicit indication that the legislature intended to leave the application of the favorable sentencing limits solely to the discretion of the prosecutor.
*685 The Odell majority's implication that LSA-C.Cr.P. Art. 493.1 is similar to 13:2501.1(J) overlooks the full text of LSA-C.Cr.P. Art. 706 concerning consolidation. The last sentence of that article points out that after consolidation on motion of the defendant, "the procedure thereafter shall be the same as if the prosecution were under a single indictment."
As I appreciate the Odell majority's logic, it is to the effect that since the charges were originally made by separate bills, the act of consolidation by the defense did not then place them in a single information to operate to reduce the penalty exposure. However, Art. 706 emphasizes that when consolidation occurs on motion of the defendant, the subsequent procedure is the same as if the charges had been originally joined. Thus, I read Arts. 706 and 493 in pari materia to mean that subsequent consolidation presents the same circumstance as original joinder under Art. 493. Therefore, the mandate of Art. 493.1 that when two or more misdemeanors are joined in accordance with Art. 493 in the same indictment should operate to require the reduced aggregate penalty and preclude a jury trial when the misdemeanors are consolidated upon defense motion.
I respectfully dissent.
NOTES
[1] LSA-R.S. 32:661 C provides:

When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first inform the person of the consequences of a refusal and the consequences if the test is conducted and the results indicate a blood alcohol concentration of .10 percent or above the weight of alcohol in the blood. In addition, the law enforcement officer shall have the person sign a standard form advising such person of his constitutional rights. The law enforcement officer shall have the person sign a separate form advising such person of the consequences of his refusal to submit to a chemical test. However, a single combination of the two forms may be used. If the person is unable or unwilling to sign the form, the law enforcement officer shall certify that such person was informed of his constitutional rights and was unable or unwilling to sign said form.
[2] As noted, State v. Odell did not directly involve LSA-C.Cr.P. Art. 493.1 which is applicable to prosecutions in district court. In this respect, the court's references to Article 493.1 could be considered dicta. However, the references are direct and specific and the same principles would seem to apply in interpreting the traffic court statute and the Code of Criminal Procedure article. Accordingly, this intermediate appellate court feels bound by the Odell decision in applying Article 493.1.

Apparently, the court in Odell was not presented with and did not consider the effect of LSA-C.Cr.P. Art. 706 on the interpretation of Article 493.1, although Article 706 was mentioned in Justice Lemmon's dissent published later in 462 So.2d 887. Article 493.1 provides that whenever two or more misdemeanors are joined in accordance with Article 493 in the same indictment or information, the maximum aggregate penalty is limited. Article 706 provides that upon motion of a defendant the court may order two or more indictments consolidated for trial if the offenses could have been joined in a single indictment. "The procedure thereafter shall be the same as if the prosecution was under a single indictment." It would seem that after consolidation on the defendant's motion, the situation is as if the multiple misdemeanors "are joined ... in the same indictment or information" placing the case within the language of Article 493.1 and making the sentence limitation provision of that Article applicable.
Still, as previously stated, we feel bound by and will follow the decision in State v. Odell.